Original

1  Tai D. Tran, Esq., (State Bar No. 287482)
2  tai.tran@admedia.com
   Ad.com Interactive Media, Inc.
3  901 W. Alameda Ave., Suite 102
4  Burbank, CA 91506
   Telephone: (800) 296-7104 ext. 239
5
6  Attorney for Plaintiffs
   CHEAP STUFF, INC., and AVI N. BIBI
7

8                    **UNITED STATES DISTRICT COURT**
9
                     **CENTRAL DISTRICT OF CALIFORNIA**
10

11  CHEAP STUFF, INC., a California          **Case No.: 2:14-cv-3535**
12  corporation; and AVI N. BIBI, an individual
                                             **VERIFIED COMPLAINT FOR:**
13        Plaintiffs,
14                                           1.  **MISAPPROPRIATION OF TRADE**
          vs.                                    **SECRETS;**
15                                           2.  **INDUCING BREACH OF CONTRACT;**
                                             3.  **BREACH OF CONTRACT;**
16  MICROSOFT CORPORATION, a                 4.  **BREACH OF COVENANT OF GOOD**
    Washington corporation; YAHOO! INC., a       **FAITH AND FAIR DEALING;**
17  Delaware corporation; GNAYAK            5.  **INTENTIONAL INFLICTION OF**
    POOONATER, an individual; MICHAEL           **EMOTIONAL DISTRESS;**
18  BROUS, an individual; and DOES 1 through 6.  **INTENTIONAL INTERFERENCE WITH**
    100, inclusive,                              **CONTRACTUAL RELATIONS;**
19                                           7.  **UNFAIR COMPETITION;**
                                             8.  **MONEY HAD AND RECEIVED;**
20        Defendants.                        9.  **ACCOUNT STATED;**
                                             10. **UNJUST ENRICHMENT**
21

22                                           **DEMAND FOR JURY TRIAL**
23

24

25

26

27

28

                                    1
                              **COMPLAINT**

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

    **COMES NOW** Plaintiffs CHEAP STUFF, INC., and AVI N. BIBI who hereby allege as follows:

## PARTIES, JURISDICTION AND VENUE

    1.    At all times relevant to this Complaint, Plaintiff CHEAP STUFF, INC., ("CHEAP STUFF") was a corporation, duly organized and existing under California law with its principal place of business at 901 W. Alameda Ave., Suite 102, Burbank, CA 91506.

    2.    At all times relevant to this Complaint, Plaintiff AVI N. BIBI ("BIBI") was a resident of Los Angeles County, State of California. BIBI is the President and Chief Executive Officer of CHEAP STUFF.

    3.    Plaintiffs are informed and believe, and on that basis, allege that Defendant YAHOO! INC. ("YAHOO") was, at all times relevant to this Complaint, a Delaware corporation doing business in California.

    4.    Plaintiffs are informed and believe, and on that basis, allege that Defendant MICROSOFT CORPORATION ("MICROSOFT") was, at all times relevant to this Complaint, a Washington corporation doing business in California.

    5.    Plaintiffs are informed and believe, and on that basis, allege that Defendant GNAYAK POONATER ("POONATER") is an individual residing and/or doing business in the County of Los Angeles, State of California, during all relevant times.

    6.    Plaintiffs are informed and believe, and on that basis, allege that Defendant MICHAEL BROUS ("BROUS") is an individual residing and/or doing business in the County of Los Angeles, State of California, during all relevant times. Plaintiffs are informed and believe, and on that basis, allege that BROUS was the Director of Business Development at YAHOO, during all relevant times.

7.     Plaintiffs are unaware of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs believe that each fictitiously sued defendant was in some way responsible for the acts alleged in the complaint.

8.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1) in that (i) the matters in controversy exceed the sum or value of $75,000 exclusive of interest and costs, and (ii) the dispute is between entities of different states (namely, California, Delaware and Washington).

9.     This Court has personal jurisdiction over Defendants because the Defendants' business activities are conducted within the territorial confines of this judicial district and division.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein alleged occurred in this judicial district and division.

11.     Plaintiffs are informed and believe, and on that basis, allege, that at all material times each of the Defendants named herein are believed to be, and are alleged to have been acting in consort with every other Defendant, and that each Defendant was an agent, coconspirator, member of a Joint Venture, servant and/or employee of their co-defendants. Further, Plaintiffs are informed and believe, and on that basis, allege that allege that in doing things herein alleged, all Defendants were acting in a managerial capacity and within the scope of their authority, whose actions and conduct alleged herein occurred with the permission and consent of all their co-defendants. Plaintiffs are informed and believe, and on that basis, allege that each Defendant's actions and conduct was known to, authorized, and ratified by all of their other co-defendants. Plaintiffs are informed and believe and thereon allege that all conduct of the individual Defendants which were outside the scope of their authority was known to, authorized, and ratified by the other Defendants. Therefore, each Defendant is alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     On or about January 26, 2009, Mainstream Advertising hired POONATER for the position of Technical PA.

13.     Mainstream Advertising became a wholly owned subsidiary of CHEAP STUFF.

14.     Mainstream Advertising was in the business of Web-based advertising.

15.     Mainstream Advertising used Web-based advertising mechanisms to accept requests for content and to handle those requests by returning a series of instructions to the Web browser that cause the browser to make requests for various advertising content from other Web servers.

16.     Mainstream Advertising employed POONATER to write source code for CHEAP STUFF and to implement business logic.

17.     POONATER wrote the program identified as rc.php, a PHP Hypertext Processor program.

18.     The rc.php program fulfills requests for content in the form of Web requests by sending "redirect" responses to the Web browser making those requests.

19.     A "redirect" response is content that typically causes a Web browser to make a subsequent request for content from a different location than the original location requested.

20.     The rc.php program uses a database that relates tags associated with a "listing", "title", "description", "bid", "url", and "redirect."

21.     The rc.php program goes through a list of listings determining whether and to what extent they are associated with external advertisements or must be fulfilled internally.

22.     The rc.php program retrieves components of listings for locally hosted content, or uses the "curl" program to gather that content from advertisers.

23.     The rc.php program produces audit records associated with these activities.

24.     The rc.php program checks to prevent reuse or replays of previous requests.

25.     The rc.php program gets and assembles the relevant advertisement URLs and parameters.

26.     The rc.php program returns advertisement URLs and related information to the browser that made the request as "redirect" responses.

27.     POONATER had access to CHEAP STUFF's bank accounts.

28.     POONATER had code level access for CHEAP STUFF's partners.

29.     Mainstream Advertising had each new employee sign a confidentiality and nondisclosure agreement promising that the employee will not use or disclose Mainstream Advertising's trade secrets and other proprietary information during and after his or her employment with Mainstream Advertising.

30.     On or about June 5, 2009, CHEAP STUFF and YAHOO entered in to Publisher Network Contract #1-20244451 (the "Agreement") whereby YAHOO agreed to deliver to CHEAP STUFF "paid search results," and CHEAP STUFF agreed to display such paid search results. A true and accurate copy of the Agreement is attached hereto as Exhibit A. Pursuant to the terms of the Agreement, YAHOO agreed to pay CHEAP STUFF 75% of the gross revenue earned by YAHOO solely from the paid search results shown on CHEAP STUFF's offerings in the applicable territory within 45 days after the end of the calendar month in which the relevant paid search results appeared on CHEAP STUFF's offerings. Between July 2009 and July 2012, CHEAP STUFF and YAHOO executed seven amendments to the Agreement. The payment terms remained unchanged from the original contract.

31.     On or about July 15, 2010, POONATER resigned from Mainstream Advertising/CHEAP STUFF to work for Microsoft Forensics team.

32.     Plaintiffs are informed and believe, and on that basis, allege that YAHOO and MICROSOFT knew or should have known that POONATER was employed by CHEAP STUFF.

33.     Plaintiffs are informed and believe, and on that basis, allege that

MICROSOFT'S Human Resources Department performed the background check on POONATER and transferred his H1 visa from CHEAP STUFF.

34.     YAHOO and MICROSOFT formed a joint enterprise on their search network and contractually shared information pertaining to search audits, evaluations and other review which included the reviews and work performed by POONATER.

35.     The joint network is described at http://yahoobingnetwork.com/en-apac/home.

36.     In or about October 2013, CHEAP STUFF found out that POONATER had stolen proprietary information in violation of the Nondisclosure and Confidentiality Agreements from the company.

37.     Plaintiffs are informed and believe, and on that basis, allege that POONATER obtained trade secrets and other proprietary information of CHEAP STUFF.

38.     Plaintiffs are informed and believe, and on that basis, allege that POONATER was building an unfounded case against CHEAP STUFF in retaliation for negative work reviews.

39.     POONATER had insider knowledge of how CHEAP STUFF's mechanisms for sending traffic worked.

40.     Plaintiffs are informed and believe, and on that basis, allege that POONATER was hired by MICROSOFT after he left Mainstream Advertising/CHEAP STUFF.

41.     Plaintiffs are informed and believe, and on that basis, allege that POONATER disclosed CHEAP STUFF's code to MICROSOFT for purposes of damaging CHEAP STUFF.

42.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT was auditing the traffic that CHEAP STUFF sent to YAHOO during relevant times of the audit.

43.     Plaintiffs are informed and believe, and on that basis, allege that POONATER performed the outcome determinative audit.

COMPLAINT

44.     Plaintiffs are informed and believe, and on that basis, allege that POONATER was one of the employees of MICROSOFT who took part in the investigation of CHEAP STUFF's traffic.

45.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT and YAHOO ultimately took the position that CHEAP STUFF's cache process was fraudulent.

46.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT did not consider other possible causes for the traffic patterns.

47.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT did not base its conclusions on sufficient information and in fact based it on a developer, POONATER, who was utilizing proprietary information which in most cases, he himself designed.

48.     POONATER was the main programmer that wrote the fraud mitigation mechanism while he was working for Mainstream Advertising/CHEAP STUFF.

49.     On November 19, 2012, YAHOO terminated its agreement with CHEAP STUFF.

50.     YAHOO sent a termination letter to CHEAP STUFF alleging/concluding that CHEAP STUFF engaged in activities that violated Section 18 "Abuse of Services" of the Agreement.

51.     Pursuant to the Agreement, payment of monthly invoices by YAHOO to CHEAP STUFF is due within forty-five days of receipt thereof.

52.     CHEAP STUFF has submitted to YAHOO the following invoices for services provided: $1,537,745.39 for September 2012; and $1,117,280.95 for October 2012. The total amount due and owing to CHEAP STUFF for the outstanding invoices is $2,655,023.34. True and accurate copies of these invoices are attached hereto as Exhibit B.

53.     CHEAP STUFF has not received payment from YAHOO for any of the invoices found attached as Exhibit B.

54.     Plaintiffs are informed and believe, and on that basis, allege that CHEAP STUFF and YAHOO are competitors. They are both publishers of online advertising.

55.     Plaintiffs are informed and believe, and on that basis, allege that YAHOO was in a contract with MICROSOFT to display Bing search results.

56.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT was a competitor with CHEAP STUFF.

57.     Plaintiffs are informed and believe, and on that basis, allege that some or all of the Results CHEAP STUFF obtained from YAHOO came from MICROSOFT.

58.     While CHEAP STUFF was in a contractual relationship with YAHOO, BIBI communicated on business matters with BROUS, who fostered the appearance of having the power to terminate CHEAP STUFF's Agreement with YAHOO.

59.     In mid-August of 2012, BIBI asked BROUS to set up a meeting to discuss traffic quality in order to dispel concerns over CHEAP STUFF and restore trust.

60.     Plaintiffs are informed and believe, and on that basis, allege that BROUS's responsibilities at YAHOO included building relationships with partners, developing partnerships, and leveraging relationships when needed.

61.     Plaintiffs are informed and believe, and on that basis, allege that BROUS would find the partners, figure out how to meet the needs, and facilitate opportunities for business.

62.     Plaintiffs are informed and believe, and on that basis, allege that even if a partner contract lay outside of BROUS's authority, BROUS determined which partner to terminate and his superiors were strongly influenced by his determinations.

63.     On or about September 5, 2012, BIBI met with BROUS to make a request to be cleared of the false accusations against CHEAP STUFF. YAHOO had said that, regarding a previous audit, CHEAP STUFF was "completely free of HIC 22."

64.     Seven days later, BROUS communicated to BIBI that BROUS wanted CHEAP STUFF to give him at least a million dollars or else the Agreement will be terminated.

COMPLAINT

65.     Plaintiffs are informed and believe, and on that basis, allege that BROUS, by this time, knew that CHEAP STUFF depended on its relationship with YAHOO as an important source of revenues and BIBI supported his family and philanthropic good works with the income from his job at CHEAP STUFF.

66.     In considering BROUS's demand, BIBI believed that BROUS had the ability to terminate the Agreement. BROUS's demand shocked and dismayed BIBI. BIBI was greatly distressed.

67.     Plaintiffs are informed and believe, and on that basis, allege that BROUS was subsequently terminated by YAHOO.

## FIRST CAUSE OF ACTION

MISAPPROPRIATION OF TRADE SECRETS

(CHEAP STUFF against Defendants MICROSOFT, YAHOO, GNAYAK POONATER, and DOES 1 through 100)

68.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

69.     CHEAP STUFF owned the following: the rc.php program and proprietary technology and computer code.

70.     This information was a trade secret at the time of the misappropriation. The information was very essential to CHEAP STUFF's business model.

71.     The information was not of public knowledge or of a general knowledge in the trade or business.

72.     The information had actual and potential independent economic value because it was secret.

73.     The information gave CHEAP STUFF an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

74.     The value that CHEAP STUFF obtained and could have obtained from the information in keeping it secret was great. Indeed, this technology advantage was the foundation on which the company was built.

75.     The extent others could have obtained value from the information if it were not secret may be that others would have been able to put CHEAP STUFF and other competitors out of business.

76.     The amount of time, money, or labor a competitor would save who used the information may be up to two years to build this technology, costing the competitor $300,000 in employee labor costs, and over one million dollars in research and development.

77.     Defendants' use of the trade secrets gave them a business advantage over Plaintiffs.

78.     Plaintiffs are informed and believe, and on that basis, allege that GNAYAK POONATER and MICROSOFT improperly acquired the trade secrets.

79.     Plaintiffs are informed and believe, and on that basis, allege that POONATER acquired the trade secrets by breaching a duty to maintain secrecy. POONATER signed a Proprietary Information and Invention Assignment Agreement with Mainstream Advertising which provided that he shall not use Mainstream Advertising's trade secrets and other proprietary information, nor disclose such information to anyone, during his employment with Mainstream Advertising and at all times thereafter.

80.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT and YAHOO acquired the trade secrets and knew or had reason to know that POONATER used improper means to acquire them.

81.     Plaintiffs are informed and believe, and on that basis, allege, that MICROSOFT and YAHOO misappropriated CHEAP STUFF's trade secrets by acquisition.

82.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT and YAHOO and POONATER disclosed and/or used CHEAP STUFF's trade secrets without CHEAP STUFF's consent.

83.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT, YAHOO, and POONATER acquired and shared knowledge of the trade secrets by improper means.

84.     Plaintiffs are informed and believe, and on that basis, allege that at the time of the disclosure and/or use, MICROSOFT, YAHOO and POONTATER knew or had reason to know that their knowledge of CHEAP STUFF's trade secrets came from or through POONATER, and that POONATER had previously acquired the trade secrets by improper means.

85.     Alternatively, Plaintiffs are informed and believe, and on that basis, allege that at the time of the disclosure and/or use, MICROSOFT and YAHOO knew or had reason to know that their knowledge of CHEAP STUFF's trade secrets came from or through POONATER, and that POONATER had a duty to CHEAP STUFF to keep the information secret or to limit use of the information.

86.     Plaintiffs are informed and believe, and on that basis, allege that GNAYAK POONATER and MICROSOFT and YAHOO improperly used the trade secrets.

87.     Plaintiffs are informed and believe, and on that basis, allege that GNAYAK POONATER and MICROSOFT and YAHOO improperly disclosed the trade secrets.

88.     CHEAP STUFF was harmed.

89.     GNAYAK POONATER's, YAHOO's and MICROSOFT's acquisition, use, and/or disclosure was a substantial factor in causing CHEAP STUFF's harm.

/

/

/

/

/

## SECOND CAUSE OF ACTION

INDUCING BREACH OF CONTRACT

(CHEAP STUFF against Defendants MICROSOFT, GNAYAK POONATER, and DOES 1 through 100)

90.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

91.     There was a contract between CHEAP STUFF and YAHOO embodied in the Agreement.

92.     Plaintiffs are informed and believe, and on that basis, allege that since MICROSOFT was auditing CHEAP STUFF's traffic sent to YAHOO, MICROSOFT knew of the contract.

93.     Plaintiffs are informed and believe, and on that basis, allege that since POONATER helped do the auditing of CHEAP STUFF's traffic sent to YAHOO, POONATER knew of the contract.

94.     Plaintiffs are informed and believe, and on that basis, allege that POONATER played a role in the investigation of CHEAP STUFF's traffic between August 2012 and November 2012.

95.     Plaintiffs are informed and believe, and on that basis, allege that POONATER had insider knowledge of how CHEAP STUFF's fraud mitigation mechanisms worked.

96.     Plaintiffs are informed and believe, and on that basis, allege that GNAYAK POONATER and MICROSOFT intended to cause YAHOO to breach the contract.

97.     Plaintiffs is informed and believe, and on that basis, allege that MICROSOFT failed to present YAHOO with information or proof, assuming MICROSOFT had the evidence, regarding incented means.

98.     Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT failed to present YAHOO with specific queries or clicks which

12

**COMPLAINT**

1 MICROSOFT claimed were generated by automated means.

2      99.    Plaintiffs are informed and believe, and on that basis, allege that

3 MICROSOFT failed to present YAHOO with specific "blind" links.

4      100.   Plaintiffs are informed and believe, and on that basis, allege that, in fact, the

5 slides that were created by MICROSOFT during the auditing of CHEAP STUFF's traffic

6 do not contain evidence to support what YAHOO claimed in its November 19, 2012

7 termination letter.

8      101.   Plaintiffs are informed and believe, and on that basis, allege that

9 MICROSOFT failed to give YAHOO actual logs to show the existence of "cooked" logs.

10     102.   Plaintiffs are informed and believe, and on that basis, allege that

11 MICROSOFT failed to give YAHOO any information on timing or direct link between

12 items and other supporting information to show a claimed sequence of events.

13     103.   Plaintiffs are informed and believe, and on that basis, allege that the

14 statements of YAHOO employees contradicted contentions by MICROSOFT that CHEAP

15 STUFF's traffic was of bad quality.

16     104.   CHEAP STUFF hired an expert to render an opinion on whether or not

17 CHEAP STUFF engaged in the activities alleged in the November 19, 2012 termination

18 letter.

19     105.   The expert said that the data posted by YAHOO does not show the select

20 specifics necessary for a viable fraud.

21     106.   Plaintiffs are informed and believe, and on that basis, allege that GNAYAK

22 POONATER's and MICROSOFT's conduct caused YAHOO to breach the contract.

23     107.   CHEAP STUFF was harmed.

24     108.   GNAYAK POONATER's and MICROSOFT's conduct was a substantial

25 factor in causing CHEAP STUFF's harm.

26 /

27 /

28 /

COMPLAINT

## THIRD CAUSE OF ACTION

BREACH OF CONTRACT

(CHEAP STUFF against Defendants YAHOO, and DOES 1 through 100)

109.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

110.     The Agreement is a valid and enforceable contract.

111.     Pursuant to the Agreement, YAHOO agreed to pay all invoices from CHEAP STUFF within forty-five days of receipt. YAHOO has breached the Agreement by failing to pay CHEAP STUFF's invoices since September 2012.

112.     CHEAP STUFF has made demands for payment prior to filing this Complaint.

113.     CHEAP STUFF has been damaged by this conduct in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(CHEAP STUFF against Defendants YAHOO, and DOES 1 through 100)

114.     Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

115.     There is an implied covenant of good faith and fair dealing implied in every contract that neither party will do anything that will injure the right of the other to receive the benefits of the agreement.

116.     Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.

117.   The obligation imposed by the implied covenant prevents one party from frustrating the other party's enjoyment of rights provided by the contract, including the right to normal business relations without subterfuges and evasions.

118.   The precise nature and extent of the duty imposed by the covenant depends on the contract and the parties' justified expectations.

119.   The Publisher Network Contract ("Agreement") referred to above contained an implied covenant of good faith and fair dealing, which obligated Yahoo to perform the terms and conditions of the Agreement fairly and in good faith and refrain from doing any act that would prevent or impede CHEAP STUFF from performing any and all of the conditions of the contract that it agreed to perform, or any act that would deprive CHEAP STUFF of the benefits of the Agreement.

120.   Plaintiffs are informed and believe, and on that basis, allege that YAHOO knew that CHEAP STUFF had fulfilled all its duties and conditions under the Agreement.

121.   YAHOO breached the implied covenant of good faith and fair dealing under the Agreement by terminating, ignoring employee extortion upon CHEAP STUFF that was going on, and abusing of the power to determine whether CHEAP STUFF's cache process was fraudulent, intentionally, in bad faith and for reasons extraneous to the Agreement.

122.   As a result of YAHOO's violation of said implied covenant of good faith and fair dealing and its reprehensible and willful conduct, CHEAP STUFF has suffered harm in:

      a.  the damage of CHEAP STUFF's valuable property interests in its contract and business;

      b.  incurring of reasonable attorneys fees in its attempts to obtain the benefits due to it under the above-stated contract with YAHOO;

      c.  substantial loss in revenues; and

      d.  causing BIBI, and employee of CHEAP STUFF, to suffer and continue suffering depression, hopelessness, and mental anguish, all to the damage of CHEAP STUFF.

123.   As a proximate result of YAHOO's breach of the implied covenant of good faith and fair dealing, CHEAP STUFF has suffered, and continues to suffer, losses in revenues, and consequential economic damages to its damage in an amount to be shown according to proof.

### FIFTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(BIBI Against Defendants YAHOO, BROUS, and DOES 1 through 100)

124.   Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

125.   Commencing in or about May 2012, and for several months thereafter, Defendant BROUS tried to force BIBI to give him money. BROUS threatened to damage BIBI's business relationship with YAHOO if BIBI did not give him money.

126.   BIBI feared that he would lose the contract with YAHOO unless he gave BROUS money.

127.   The role of the business development department in a company is usually to build and maintain relationships with partners. The relationship between CHEAP STUFF and YAHOO was significantly influenced by BROUS in his role on YAHOO's Business Development team.

128.   In fact, BROUS fostered the appearance of having the power to terminate CHEAP STUFF's Agreement with YAHOO.

129.   On or about September 12, 2012, BIBI told BROUS, "Please man, I have employees to pay and kids to feed, don't do this to me!" Plaintiffs are informed and believe, and on that basis, allege that BROUS knew that his conduct would likely result in harm due to mental distress, or, alternatively, that BROUS gave little or no thought to the probable effects of his conduct.

130.   Plaintiffs are informed and believe that BROUS laid a trap for BIBI, and that there was a conspiracy to trick and defraud BIBI.

131.   BROUS's conduct was outrageous.

132.   BIBI suffered anguish, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

133.   BROUS's conduct was a substantial factor in causing BIBI's severe emotional distress.

134.   BROUS was YAHOO's employee.

135.   Plaintiffs are informed and believe, and on that basis, allege that at the time BIBI was harmed, BROUS was acting in the course and scope of his employment.

## SIXTH CAUSE OF ACTION

INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
(CHEAP STUFF against MICROSOFT, POONATER, BROUS and DOES 1 through 100)

136.   Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below, except paragraph 135, and repeat and re-allege such averments hereinafter with the same force and effect.

137.   There was a contract between CHEAP STUFF and YAHOO.

138.   MICROSOFT knew of the relationship.

139.   POONATER knew of the relationship.

140.   BROUS knew of the relationship.

141.   Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT intended to disrupt the relationship.

142.   Plaintiffs are informed and believe, and on that basis, allege that POONATER intended to disrupt the relationship.

143.   Plaintiffs are informed and believe, and on that basis, allege that BROUS intended to disrupt the relationship.

144. Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT also engaged in wrongful conduct, including, but not limited to, through misappropriation of trade secrets.

145. Plaintiffs are informed and believe, and on that basis, allege that POONATER also engaged in wrongful conduct, including, but not limited to, through misappropriation of trade secrets.

146. Plaintiffs are informed and believe, and on that basis, allege that BROUS also engaged in wrongful conduct, including, but not limited to, through extortion.

147. MICROSOFT's conduct prevented performance or made performance more expensive or difficult.

148. POONATER's conduct prevented performance or made performance more expensive or difficult.

149. BROUS's conduct prevented performance or made performance more expensive or difficult.

150. CHEAP STUFF was harmed.

151. MICROSOFT's conduct was a substantial factor in causing CHEAP STUFF's harm.

152. POONATER's conduct was a substantial factor in causing CHEAP STUFF's harm.

153. BROUS's conduct was a substantial factor in causing CHEAP STUFF's harm.

154. Plaintiffs are informed and believe, and on that basis, allege that BROUS was not acting on behalf of YAHOO. Plaintiffs are informed and believe, and on that basis, allege that BROUS was acting for himself.

/

/

/

/

COMPLAINT

### SEVENTH CAUSE OF ACTION

UNFAIR COMPETITION

(CHEAP STUFF and BIBI against MICROSOFT, POONATER, YAHOO, BROUS, and DOES 1 through 100)

155.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

156.    *California Business & Professions Code* §§ 17200, *et seq.*, prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice…" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

157.    As more fully described above, the Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. Some of this conduct is ongoing and continues to this date.

158.    Specifically, Plaintiffs are informed and believe, and on that basis, allege that MICROSOFT and POONATER engaged in deceptive business practices with respect to web traffic auditing and related matters by misappropriating of trade secrets as a means to gaining competitive advantage.

159.    Specifically, Plaintiffs are informed and believe, and on that basis, allege that YAHOO and BROUS engaged in deceptive business practices with respect to search marketing and related matters by:

    a.  Coercing publishers to pay bribes; and

    b.  Utilizing proprietary information and trade secrets to generate claw back cases without a single advertiser complaint.

160.    The foregoing acts and practices have caused substantial harm to CHEAP STUFF, other competitors, and/or California consumers.

161.    As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Defendants, Plaintiffs, other competitors, and/or California consumers have suffered and will continue to suffer damages in the form of theft.

162.    By reason of the foregoing, the Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution.

## EIGHTH CAUSE OF ACTION

MONEY HAD AND RECEIVED

(CHEAP STUFF against YAHOO, and DOES 1 through 100)

163.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

164.    Within the last two years, at Los Angeles County, California, YAHOO became indebted to CHEAP STUFF in a certain sum according to proof at trial for money had and received by YAHOO for the use and benefit of CHEAP STUFF.

165.    YAHOO has received monies for revenues earned on search marketing transactions that were intended to be used for the benefit of CHEAP STUFF.

166.    The money was not used for the benefit of CHEAP STUFF.

167.    YAHOO has not given the money to CHEAP STUFF.

## NINTH CAUSE OF ACTION

ACCOUNT STATED

(CHEAP STUFF against YAHOO, and DOES 1 through 100)

168.    Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

169.    YAHOO owed CHEAP STUFF money from previous financial transactions.

170.   CHEAP STUFF performed search marketing services to YAHOO at its request, and for which YAHOO agreed to pay.

171.   Within the last two years, at Los Angeles County, California, an account was stated in writing between CHEAP STUFF and YAHOO.

172.   On this statement, a balance of $2,655,023.34 was owed to CHEAP STUFF from YAHOO. A true and correct copy of this account is attached as Exhibit B and is incorporated by reference in this Complaint.

173.   YAHOO, by words or conduct, promised to pay the stated amount to CHEAP STUFF.

174.   YAHOO has not paid all of the amount owed under this account.

175.   YAHOO is indebted to CHEAP STUFF money due in the amount of $2,655,023.34, together with interest.

## TENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

(CHEAP STUFF against YAHOO, and DOES 1 through 100)

176.   Plaintiffs incorporate by reference each and every allegation set forth hereinabove and below and repeat and re-allege such averments hereinafter with the same force and effect.

177.   YAHOO was (1) was enriched; (2) the enrichment was at CHEAP STUFF's expense; and (3) the circumstances were such that equity and good conscience require YAHOO to make restitution to CHEAP STUFF.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs AVI N. BIBI and CHEAP STUFF, INC., pray for judgment against Defendants MICROSOFT, YAHOO, GNANAK POONATER,

MICHAEL BROUS and DOES 1 through 100, inclusive, and each of them jointly and severally, as follows:

1.     On the First Cause of Action, issue an injunction against future disclosure or unauthorized use, and award CHEAP STUFF damages in an amount to be proven at trial greater than the minimum jurisdictional limits of this Court plus punitive damages, lost profits according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney fees;

2.     On the Second Cause of Action, award CHEAP STUFF damages in an amount to be proven at trial greater than the minimum jurisdictional limits of this Court plus punitive damages, lost profits according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney fees;

3.     On the Third Cause of Action, award CHEAP STUFF damages in the amount of $2,655,023.34 plus lost profits according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney fees;

4.     On the Fourth Cause of Action, award CHEAP STUFF damages in the amount of $2,655,023.34 plus lost profits according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney fees;

5.     On the Fifth Cause of Action, award BIBI damages in an amount to be proven at trial greater than the minimum jurisdictional limits of this Court plus punitive damages, lost profits according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney fees;

6.     On the Sixth Cause of Action, award CHEAP STUFF damages in an amount to be proven at trial greater than the minimum jurisdictional limits of this Court plus punitive damages, lost profits according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney fees;

7.     On the Seventh Cause of Action, pursuant to *California Business and Professions Code* § 17203, that all Defendants, their successors, agents, representatives,

COMPLAINT

1  employees, and all persons who act in concert with them be permanently enjoined from

2  committing any acts of unfair competition in violation of *California Business &*

3  *Professions Code* §§ 17200, *et seq.*, including, but not limited to, the violations alleged

4  herein; that Defendants be required to make full restitution, payment, and civil penalties

5  pursuant to California law; and for lost profits according to proof, accrued interest, pre-

6  judgment interest, costs, and reasonable attorney fees;

7         8.     On the Eighth, Ninth, and Tenth Causes of Action, award CHEAP STUFF

8  the reasonable value of its services totaling at least $2,655,023.34, plus lost profits

9  according to proof, accrued interest, pre-judgment interest, costs, and reasonable attorney

10  fees; and

11         9.     For such other and further relief as the Court may deem proper.

13  DATED:  May 7, 2014               Respectfully submitted,

16                                          /s/

17                                Tai D. Tran, Esq.
                              Attorney for Plaintiffs CHEAP STUFF, INC.,

18                                and AVI N. BIBI

20                    **REQUEST FOR JURY TRIAL**

22       Plaintiffs request a trial by jury for all claims so triable.

23  DATED:  May 7, 2014               Respectfully submitted,

26                                            /s/

27                                Tai D. Tran, Esq.
                              Attorney for Plaintiffs CHEAP STUFF, INC.,

28                                and AVI N. BIBI

COMPLAINT

# VERIFICATION

I, CHEAP STUFF, INC., am one of the Plaintiffs in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to the matters therein stated on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was executed at Burbank, California.

DATED:     May 7, 2014

/s/
_____

Avi N. Bibi

President/CEO

CHEAP STUFF, INC.

I, AVI N. BIBI, am one of the Plaintiffs in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to the matters therein stated on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was executed at Burbank, California.

DATED:     May 7, 2014

/s/
_____

AVI N. BIBI

COMPLAINT

1

## PROOF OF SERVICE

2

3
I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is 901 W. Alameda Ave., Suite 102, Burbank, CA 91506.

4
On May 7, 2014, I served on the parties of record in this action the foregoing document described as:

5

6
**[X]      VIA MAIL:**

7
By placing [] the original [x] true copies thereof enclosed in sealed envelopes addressed as follows:

8

9

10

11

12

13

14

15

16

17
As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with Federal Express on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

18

19

20
[ ]      **VIA FACSIMILE:**      I transmitted via facsimile to the office of the addressee listed above.The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.Pursuant to Rule 2005(i) the machine printed a transmission record of the transmission.

21

22
[]      **VIAPERSONAL SERVICE:**

23
[]      **VIAELECTRONIC MAIL:**

24
Executed on **May 7, 2014**, at.

25
[X]      (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

26

27
Type or Print Name                                        Signature

28

-1-

**PROOF OF SERVICE**